IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| BOBBY LEE QUARLES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV 113-117 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) ) ) |
| Defendant. | ) ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Bobby Lee Quarles ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff applied for DIB and SSI on June 18, 2009, alleging a disability onset date of January 1, 2006. Tr. ("R."), pp. 75-76, 140-50. The Social Security Administration denied

---

[1] For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Plaintiff's applications initially, R. 90-93, and on reconsideration, R. 94-101. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 102-06, and the ALJ held a hearing on June 27, 2011. R. 45-74. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Mark Leaptrot, a Vocational Expert ("VE"). Id. On January 19, 2012, the ALJ issued an unfavorable decision. R. 24-44.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq*., and 416.971 *et seq*.).

2. The claimant has the severe impairment of status post lumbar surgery (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work[2] as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he requires a sit/stand option and the ability to use a cane on the job as needed with occasional ramps, stairs, balancing, stooping, kneeling, crouching, crawling, no ladders or heights, frequent reaching, handling and fingering with the dominant right hand and arm and unlimited with the left arm. The claimant is unable to

---

[2] "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

perform any past relevant work. (20 C.F.R. §§ 404.1565 and
                    416.965).

    5.          Considering the claimant's age, education, work experience, and
                RFC, there are jobs that exist in significant numbers in the national
                economy that the claimant can perform (20 C.F.R. § 404.1569,
                404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has
                not been under a disability, as defined in the Social Security Act, from
                January 1, 2006 through January 31, 2012 (the date of the ALJ's
                decision) (20 C.F.R. § 404.1520(g) and 416.920(g)).

R. 27-38.

When the Appeals Council denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to (1) find that he satisfied the criteria for automatic disability under Listing 12.05(C), (2) give appropriate weight to Plaintiff's Global Assessment of Functioning ("GAF") scores; and (3) discuss the treatment notes of Dr. Norman Chutkan and records from the Georgia Department of Corrections ("DOC"). See doc. no. 23 ("Pl.'s Br."). Plaintiff also argues the Appeals Council failed to consider new evidence provided after the ALJ issued her decision, and that a remand is therefore necessary. Id. The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed, and that the evidence submitted after the ALJ's decision does not necessitate remand of this case. See doc. no. 26 ("Comm'r's Br.").

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence,

3

and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ Properly Found that Plaintiff Was Not Disabled Under Listing 12.05C.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, -F. App'x-, 2014 WL 595284, at *3 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (*per curiam*) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant

disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (*per curiam*); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than

---

[3]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

6

'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992).

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### 1. Plaintiff Did Not Satisfy the Diagnostic Definition of Intellectual Disability, Because He Did Not Show Evidence of Deficits in Adaptive Functioning Manifesting Prior to Age Twenty-Two.

At step three of the evaluation, the ALJ applied the proper criteria for analyzing disability under Listing 12.05(C). Plaintiff merely stated, without any supporting evidence, that he "had substantial learning difficulties during his schooling years and that he was in special education classes." R. 31. The ALJ properly found that Plaintiff did not meet the requirements of Listing 12.05(C) because "there is no evidence to support the claimant had significantly subaverage intellectual functioning with deficits in adaptive behavior that was

initially manifested prior to the age of 22." Id.; see also Harris v. Comm'r of Social Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (*per curiam*) (affirming ALJ's finding that claimant did not show deficits in adaptive functioning prior to age twenty-two despite claimant's enrollment in special education classes as a child).

Plaintiff relies on Hodges to argue that the low IQ scores reported by consultative examiner Dr. Whitley raise a presumption of lifelong limitations such that he need not demonstrate deficits in adaptive functioning before age twenty-two. Pl.'s Br. 17-18. However, unlike the situation in Hodges, no such presumption arose in this case because, as explained infra section III.A.2, the ALJ properly found Plaintiff's IQ scores to be invalid. Even if the presumption had been raised here, the court in Hodges stated that the presumption could be rebutted by evidence of daily activities. See Hodges, 276 F.3d at 1269. Here, as explained below, the ALJ relied on evidence of Plaintiff's daily activities in finding that the low IQ scores are invalid and that Plaintiff is not intellectually disabled. In sum, the ALJ properly found that Plaintiff did not qualify for automatic disability under Listing 12.05(C) because there is no evidence of deficits beginning before age twenty-two, and the Hodges presumption does not apply.

### 2. Plaintiff Did Not Present a Valid IQ Score Because the ALJ Properly Assigned Dr. Whitley's Opinion No Weight.

In determining Plaintiff's RFC, the ALJ thoroughly analyzed and discussed the opinions and IQ score reports of consulting psychologist Dr. Whitley, and found that they were not entitled to any weight. See R. 31, 34-35. During Dr. Whitley's first examination, on February 6, 2009, Plaintiff received a full scale IQ score of 63. R. 441. Plaintiff received a full scale IQ score of 61 during Dr. Whitley's second examination, performed on January

8

12, 2010. R. 720. Both scores are within the range of sixty to seventy prescribed by Listing 12.05(C). Thus, as noted by the ALJ, Dr. Whitley ultimately diagnosed Plaintiff at Axis II with borderline intellectual functioning and stated he "was therefore limited to simple and unskilled types of tasks and precluded from work tasks that entailed sound literacy; however he was able to make basic occupational adjustments and decisions." R. 34, 721. This is the only diagnosis in the record as to Plaintiff's intellectual functioning. R. 441, 721.

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician, such as Dr. Whitley. As a general rule, the opinion of a consultative examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004) (*per curiam*). Furthermore, as stated above, an ALJ need not give great weight to IQ scores, including those scores that the examiner deems valid, when they are inconsistent with the evidence of the claimant's daily activities and behavior. See Lowery, 979 F.2d at 837; Popp, 779 F.2d at 1499; see also Black v. Astrue, 678 F. Supp. 2d 1260-61 (N.D. Fla. Jan. 5, 2010) (discussing several cases in the Eleventh Circuit where valid IQ scores below seventy were invalidated by evidence such as past work that required technical knowledge and skill, possession of a driver's license, and conflicting reports of limitations by the claimant).

Here, the ALJ rejected both IQ scores because Dr. Whitley "relied primarily upon the claimant's subjective allegations that were obtained during the examination and from an adult disability questionnaire completed by the claimant's girlfriend," and did not have access to "any other objective evidence of record to substantiate his opinion." R. 34-35. The ALJ

found Plaintiff's statements as to his functioning and activities to be inconsistent, as he reported in some instances that he could shop and drive a car, and in others that he could not. R. 34, 185-93, 215-25, 437-42. The ALJ noted that, although Dr. Whitley deemed the IQ scores to be valid, he did so without addressing the various inconsistencies in the allegations on which he relied, R. 35. Popp, 779 F.2d 1497, 1499.

The ALJ noted additional inconsistencies between Plaintiff's IQ scores and the evidence of record, including that "throughout [Dr. Whitley's] examination, the claimant was able to understand questions without difficulty." R. 35. The ALJ also found that Plaintiff's activities and self-employment as a brick mason, during which time "he had never been reprimanded nor fired due to his mental impairment," was inconsistent with the IQ scores and a finding of intellectual disability. Id. Furthermore, although Dr. Whitley's clinical diagnosis of borderline intellectual functioning, as opposed to intellectual disability, is not conclusive as to whether Plaintiff is intellectual disabled pursuant to Listing 12.05(C), it is worth noting that the two clinical diagnoses are mutually exclusive of one another. See Jordan v. Comm'r of Social Sec. Admin., 470 F. App'x 766, 768-69 (11th Cir. 2012) (*per curiam*).

Based upon this substantial evidence, the ALJ ultimately concluded that "[t]he longitudinal record does not support a finding of low IQ." Id. The ALJ therefore found that Dr. Whitley's findings were internally inconsistent and inconsistent with the medical evidence of record, R. 35. Lowery, 979 F.2d at 837. Accordingly, the ALJ properly assigned no weight to Dr. Whitley's opinions and IQ score reports based on substantial evidence that Plaintiff was not intellectually disabled.

### B. The ALJ Properly Considered the Medical Evidence.

Plaintiff also argues the ALJ failed to give appropriate weight to his GAF scores and to discuss the findings of treating physician Dr. Chutkan and records from the DOC. In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (*per curiam*) (same).

Moreover, the ALJ has a duty to develop the facts of the case fully and fairly. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (*per curiam*) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)). As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why [she] reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id. Furthermore, under Social Security Ruling ("SSR") 96-8p, the determination

of RFC is reserved to the ALJ and is based on all the relevant medical and other evidence in the record. SSR 96-8p, 1996 WL 374184, at *2 (1996).

However, the Eleventh Circuit has clarified "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in [her] decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered [his] medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))).

### 1.     The ALJ Properly Gave Little Weight to Plaintiff's GAF Scores.

Plaintiff argues the ALJ improperly assigned little weight to his GAF scores, which the ALJ acknowledged were "between 47-59." R. 35. However, a "GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work." Ward v. Astrue, No. 3:00-CV-1137-J-HTS, 2008 WL 1994978, at *3 (M.D. Fla. May 8, 2008) (citation omitted) ("[A]n opinion concerning GAF, even if required to be accepted as valid, [does] not translate into a specific finding in regard to functional limitations."); see also Wind v. Barnhart, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (*per curiam*) (noting that "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs'") (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 50764). Here, the ALJ acknowledged Plaintiff's GAF scores, but properly gave them little weight. R. 35

(citing R. 271-92, 331-41, 389-407, 437-42, 716-22.) As such, this issue provides no basis for remand.

### 2. The ALJ Adequately Discussed the Physicians' Notes in the Medical Record.

Plaintiff argues the ALJ's decision is not supported by substantial evidence because he failed to discuss post-lumbar surgery treatment notes from March and June 2007, reflecting the findings of Dr. Chutkan, Plaintiff's orthopedic surgeon. Pl.'s Br., p. 20. The notes Plaintiff references are two individual entries contained in 180 pages of treatment records from MCG Health, Inc. spanning a time period of October 2006 through May 2009 and including records from multiple treatment providers in addition to Dr. Chutkan. See R. 497-677. First, the ALJ cited these records in his discussion of the medical evidence, during which he thoroughly summarized the voluminous medical record. R. 32 (citing R. 497-677.) Second, the ALJ also referenced additional treatment records from MCG Health, Inc. and Dr. Chutkan's office in his discussion of Plaintiff's back condition. R. 32 (citing R. 342-88, 485-96.)

The ALJ was not required to discuss each piece of evidence from these records individually, and his discussion of the medical evidence does not indicate that he failed to analyze Plaintiff's condition as a whole. Dyer, 395 F.3d at 1211; McCray, 175 F. Supp. 2d at 1336. Furthermore, the two notes in question indicate only that Plaintiff's back condition was continuing to improve when Dr. Chutkan saw him in March and June 2007. R. 656, 662. Plaintiff argues "[t]here is no indication Quarles ever improved further, so it is presumed he did not," Pl.'s Br., p. 21, but the ALJ cited substantial evidence in the record indicating that Plaintiff did in fact continue to improve. R. 32 (citing 706-15, 759-77.) In

sum, the ALJ's failure to individually address two of Dr. Chutkan's notes does not provide cause for remand.

### 3. The ALJ Adequately Addressed the DOC Records.

Plaintiff also argues the ALJ should have discussed records from the DOC, in which Plaintiff was ordered medically unassigned from work by prison medical staff. Pl.'s Br., p. 22 (citing R. 421-22, 429-30.) Plaintiff argues the records amount to an agency disability determination, and should therefore be treated like disability determinations of the Department of Veteran's Affairs ("VA"), which are entitled to great weight. See Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984). However, the medical opinions of another agency on an issue reserved to the Commissioner, even those as involved as a VA disability determination, are not binding on the ALJ. 20 C.F.R. §§ 404.1504(a) and 416.904(a); see also Brady, 724 F.2d at 921 (holding that VA disability determination, although entitled to great weight, was not binding on ALJ in social security case).

Here, the ALJ cited the DOC records during his analysis of Plaintiff's back condition, R. 32 (citing R. 408-30), and, as discussed above, he was not obligated to individually discuss each piece of evidence. Dyer, 395 F.3d at 1211; McCray, 175 F. Supp. 2d at 1336. The records do not reflect a determination based on Georgia regulations and the DOC's work classification factors, which at least one court has found to be a disability determination. See Henson v. Astrue, No. 1:09-cv-1759, 2010 WL 3749186, at *20 (N.D. Ga. Sept. 20, 2010). Rather, the records in question are merely hand-written notes prescribing finite periods of rest, along with medication, and they provide no analysis or prognosis as to Plaintiff's condition or limitations. See R. 421-22, 429-30. Furthermore, the records do not indicate

that Plaintiff is permanently unable to work. See id. As such, the ALJ did not err in declining to specifically address the DOC records in his summary of the medical evidence.

### C. The Appeals Council Did Not Err in Refusing to Consider the New Evidence Provided by Plaintiff, and a Remand Is Not Needed.

Lastly, Plaintiff contends he presented information to the Appeals Council that should have resulted in a remand to the ALJ for further consideration. Pl.'s Br., pp. 22-24. Specifically, Plaintiff argues that two functional questionnaires, provided by an orthopedist and a treating physician, should have been added to the record and considered. Id. at 23. Plaintiff asserts the physicians opined physical and postural limitations that are more restrictive than those in his RFC and render him unable to work. (See generally doc. nos. 23-1, 23-2.)

Under Eleventh Circuit law, "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007). In other words, when the Appeals Council denies review despite the submission of additional evidence, the determinative inquiry is whether Plaintiff has submitted "new, material, chronologically relevant evidence" to the Appeals Council that "renders the decision of the [ALJ] to deny benefits unsupported by substantial evidence." Id. at 1261, 1266. "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (*per curiam*) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)).

Here, there is no medical support for the conclusions contained in the questionnaires,

which consist primarily of check-the-box ratings with little space for further explanation by the physicians. (See doc. nos. 23-1, 23-2.) Such reports, even by treating physicians, when unaccompanied by objective medical evidence or wholly conclusory in form, may be discounted. Crawford, 363 F.3d at 1159. Furthermore, the questionnaires do not concern new conditions or developments in Plaintiff's health, but instead merely discuss those limitations that were thoroughly considered and discussed by the ALJ in determining Plaintiff's RFC. As such, they are merely cumulative, and would not likely have changed the result. See Robinson, 365 F. App'x at 996.

More importantly, the Appeals Council rejected the questionnaires because they did not pertain to the time before the ALJ's decision. R. 2. Plaintiff argues this was error because both physicians stated "that the functional limitations they described had persisted for 12 months or longer." Pl.'s Br., p. 23. However, both physicians merely checked the box indicating that Plaintiff's impairments lasted or *could be expected to last* at least twelve months. (Doc. no. 23-1, p. 5; doc. non. 23-2, p. 4.) Indeed, when asked the earliest date on which the opined impairments applied, one physician answered "not known" and the other left the question blank. (Doc. no. 23-1, p. 6; 23-2, p. 5.) As such, neither physician indicated that the opined restrictions applied to the relevant time period, and the Appeals Council's decision was not improper. Thus, Plaintiff has failed to show that the additional documentation is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson, 365 F. App'x at 996.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the

Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 9th day of July, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA